J-A21011-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| AARON M. HARRIS, | |
| Appellant | No. 845 WDA 2016 |

Appeal from the Judgment of Sentence January 13, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0005587-2015

BEFORE:  BENDER, P.J.E., OLSON, J., and STABILE, J.

MEMORANDUM BY BENDER, P.J.E.:           **FILED OCTOBER 30, 2017**

Appellant, Aaron M. Harris, appeals from the judgment of sentence of 18 to 45 months' incarceration and an aggregate consecutive term of six years' probation.  On appeal, he challenges the sufficiency of the evidence to support his conviction of Possession with Intent to Deliver a Controlled Substance (hereinafter "PWID"), 35 P.S. § 780-113(a)(30).  We affirm.

The trial court summarized the procedural history and factual background of this case as follows:

> On October 16, 2015, this [c]ourt found Appellant … guilty of one count of [PWID] ([] cocaine), two counts of Possession of a Controlled Substance (heroin and cocaine)[, 35 P.S. § 780-113(a)(16)], and one count of Possession of a Small Amount of Marijuana[, 35 P.S. 780-113(a)(31)].  This [c]ourt sentenced Appellant on January 13, 2016, to a term of 18 to 45 months at Count One (PWID), and an aggregate consecutive term of six

years['] probation.[1]  Appellant's Post-Sentence Motion was denied on May 19, 2016.  Appellant filed a Notice of Appeal on June 13, 2016[,] and his Statement of Errors Complained of on Appeal on August 1, 2016.

\*\*\*

At trial, Appellant stipulated to possession of cocaine but disputed that he had intent to deliver.  Robert Fassinger, a parole agent for the Commonwealth of Pennsylvania for the past nine years, testified that he supervised Appellant after he was paroled from a [sentence of] four years and two months to ten years … for PWID.  Fassinger testified that all of Appellant's drug screens were clean[1] but Appellant had not obtained employment.[2]  On February 19, 2015, Fassinger went to Appellant's residence at approximately 6:30 a.m.  After a few moments of knocking, someone inside asked[,] "Who is it?"  Fassinger identified himself and then heard significant movement within the residence.  He testified that once the door was opened, he immediately smelled "an obvious odor of burnt marijuana."  He placed Appellant in handcuffs for safety reasons and conducted a pat down for weapons.  During the pat down, Fassinger felt stamped bags of heroin in Appellant's pocket.  Fassinger recovered twenty-two bags of heroin, crack cocaine weighing over thirteen grams[3] and a small amount of marijuana from Appellant's person.[2]  Appellant also had $380.00 cash in his pocket.  In addition, Fassinger observed a digital scale in the living room.  Fassinger did not find any use paraphernalia from his search of Appellant or in his apartment.

> [1] On cross-examination, the witness stated all screens were negative for cocaine and heroin.  He did not

---

[1] Specifically, Appellant received three years' probation for his PWID conviction, and a consecutive three years' probation for his conviction of possession of a controlled substance (heroin).  The trial court did not impose further penalties for the remaining counts.

[2] The Commonwealth concedes that the crack cocaine actually weighed 6.3 grams.  It acknowledges that "[t]his amount differs from the view expressed in the trial court opinion."  Commonwealth's Brief at 3 n.2; **accord** Appellant's Brief at 30 ("The piece of cocaine seized from [Appellant] weighed 6.3 grams….").

remember specifically Appellant['s] testing positive for THC (marijuana), but he believe[d] Appellant may have, based on his history.

[2] Appellant testified that he was given drug screens on a weekly basis upon his release, and monthly screens thereafter.

[3] The witness clarified on cross-examination that his notes indicate[d] the weight being 8.4 grams.

Next, Detective Brian Nichols of the City of Pittsburgh Police Department testified as a narcotics expert. Detective Nichols testified that, in his expert opinion, the cocaine was possessed with the intent to deliver it and not to consume it individually. He based his opinion on several factors. Detective Nichols testified that the amount recovered represented thirty-one large doses of crack cocaine.[3] He found the absence of usage paraphernalia and the presence of a digital scale to be factors in support of his conclusion that the cocaine was possessed with intent to deliver. He also found significant the fact that Appellant [had] $380.00 on his person despite Appellant['s] not having an employment history that would support Appellant['s] having this amount of money. Detective Nichols testified that a typical crack cocaine user would have little crack cocaine on him at any given time but use paraphernalia would be found throughout the house. Crack cocaine consumers often have burnt fingers, white lips and tongue, sunken faces, dirty clothes and body odor. Detective Nichols testified that Appellant did not appear to have any characteristics of a typical crack user.

Lastly, Appellant took the stand in his own defense. Appellant testified that he was smoking marijuana laced with crack cocaine in January and February of 2015. He chose to use crack and marijuana because he no longer had access to K2, a synthetic version of marijuana. He claimed that the cocaine that he possessed was strictly for his own personal use.

Trial Court Opinion (TCO), 12/5/2016, at 2-4 (internal citations).

_____

[3] Detective Nichols testified that "6.3 something grams [of crack cocaine] would be about 31½ doses." N.T. Trial, 10/16/2015, at 36.

As stated above, Appellant filed a timely notice of appeal, and complied with the trial court's instruction to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Presently, Appellant raises a single issue for our review:

> Was the evidence insufficient as a matter of law to convict [Appellant] of [PWID], where the Commonwealth failed to prove beyond a reasonable doubt that the cocaine in his possession was possessed for anything other than his own personal use?

Appellant's Brief at 6 (unnecessary capitalization and emphasis omitted).

Initially, we set forth our standard of review:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.
>
> This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Although a conviction must be based on more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty.

- 4 -

*Commonwealth v. Brockman*, -- A.3d --, 2017 WL 2855094, at *7 (Pa. Super. filed July 5, 2017) (citation omitted).

On appeal, Appellant argues that "[t]he evidence was insufficient as a matter of law to convict [him] of PWID, as the Commonwealth failed to prove beyond a reasonable doubt that the cocaine in [Appellant's] possession was for anything other than personal use." Appellant's Brief at 24. He claims that he "possessed … a quantity that is by no means an uncommon purchase made by users[,]" and he did not possess accoutrements or display behaviors that were consistent with drug dealing. *Id.* Accordingly, he claims that "[h]is conviction for PWID must … be reversed." *Id.* at 26. We disagree.

Under 35 P.S. § 780-113(a)(30), PWID is defined as follows:

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

***

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30).

Furthermore,

[w]hen determining whether an individual in possession of drugs intended to deliver them, the starting point is the quantity possessed.

In Pennsylvania, the intent to deliver may be inferred from possession of a large quantity of controlled substance. It

- 5 -

follows that possession of a small amount of a controlled substance supports the conclusion that there is an absence of intent to deliver. Notably, if, when considering only the quantity of a controlled substance, it is not clear whether the substance is being used for personal consumption or distribution, it then becomes necessary to analyze other factors.

***Commonwealth v. Lee***, 956 A.2d 1024, 1028 (Pa. Super. 2008) (citation and quotation marks omitted). ***See also Commonwealth v. Ratsamy***, 594 Pa. 176, 182, 934 A.2d 1233, 1237 (2007) (stating "if the quantity of the controlled substance is not dispositive as to the intent, the court may look to other factors."). The list of additional factors includes:

the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and [the] sums of cash found in possession of the defendant. The final factor to be considered is expert testimony. Expert opinion testimony is admissible concerning whether the facts surrounding the possession of controlled substances are consistent with an intent to deliver rather than with an intent to possess it for personal use.

***Id.*** at 183, 934 A.2d at 1237-38 (quotation and internal quotation marks omitted).

***Brockman***, 2017 WL 2855094, at *8.

In the case *sub judice*, the trial court reasoned:

The circumstantial evidence in this case strongly supports the conclusion that Appellant possessed the cocaine with intent to deliver it. Appellant had enough cocaine on him for over thirty individual uses but no paraphernalia indicative of use. He had $380.00 in his pocket but no job. He had been giving clean screens during his probation supervision. The digital scale in his living room further suggests that he was operating a drug dealing business within his home. In addition, Detective Nichols testified that, in his expert opinion, Appellant did not have the physical characteristics consistent with crack cocaine usage.

TCO at 5.

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we conclude that there is sufficient evidence to support Appellant's PWID conviction.[4]  The above factors support a conclusion that Appellant did not possess the crack cocaine for personal use, but instead for delivery.  Further, Appellant's arguments to the contrary urge us to improperly weigh and view the evidence in the light most favorable to him, which we decline to do.[5]  Thus, based on the foregoing, we affirm his judgment of sentence.

Judgment of sentence affirmed.

_____

[4] *Cf. Commonwealth v. Brown*, 904 A.2d 925, 932 (Pa. Super. 2006) (determining that evidence was sufficient to support the defendant's PWID conviction where the police recovered "a clear plastic bag that was knotted and contained a large chunk (5.71 grams) of … cocaine[,]" seized $308 from the unemployed defendant, and had observed the defendant in a "a very high drug area at 10:00 p.m.").

[5] For instance, Appellant argues that "it is often more cost effective to buy in bulk, and this concept also can apply to illegal drugs"; he points out that "[a] digital scale … is not an uncommon accessory possessed by drug users who merely wish to be assured that they are getting from their drug dealer what they are paying for"; and finally, he asserts that "there are obviously legal means of obtaining cash other than from formal employment."  *See* Appellant's Brief at 33, 37, 43.  While this all may be true, we may not substitute our judgment for the fact-finder.  *See Brockman*, 2017 WL 2855094, at *7.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/30/2017